Coös,
Dec. 7, 1909.

## WILLETTE v. INTERNATIONAL · PAPER CO.

In an action of negligence against an employer, certain evidence deemed sufficient to warrant the conclusion that the defendant omitted to establish reasonable regulations for the conduct of his business, and failed to exercise due care in the selection of the plaintiff's fellow-servant.

CASE, for personal injuries. Trial by jury and verdict for the plaintiff. Transferred from the December term, 1908, of the superior court by *Pike*, J., on the defendants' exception to the denial of their motion for a nonsuit.

The plaintiff's evidence tended to prove the following facts: The plaintiff was employed by the defendants. His work required him to unload pulp-wood from cars which had been switched onto a track running into one of the defendant's mills, and he was thus employed for about five weeks previous to his injury, the defendants' business requiring the unloading of from seven to ten cars daily. Loaded cars were left on the track some distance above the mill, and it was the duty of workmen to take them down the track to the mill. The track was built on a grade, and cars left there were usually held in position by setting the brakes and placing trigs under the wheels. In trigging the wheels, the workmen used such pieces of wood as they found lying about on the ground. Some of the trigs were flat and some were round, and they varied in length from six inches to four feet. Sometimes a car ran so far onto the trigs as to make their removal difficult.

The cars were handled by the carrier crew, who took them down to a place called the carrier and partly unloaded them, and by the tank crew, who took them from the carrier to a place called the tank and finished the work of unloading. When the tank crew came up to the carrier to get a partially loaded car, it was a signal to the carrier crew to start up the track for another car. If the brakes were in working order, which was not always the case, the movement of a car could be controlled by a brakeman riding upon it.

One McCann had charge of the wood-room and the handling and unloading of cars. About three weeks before the plaintiff was injured, one Jacques applied for work in the wood-room and told McCann that he had been employed in the wood-room at the Cascade mill. Four days and a half before the plaintiff was injured, McCann sent for Jacques and ordered him to work upon a car which was being unloaded at the carrier by the carrier crew.

After the unloading was completed, Colback, a fellow-servant of Jacques and a member of the carrier crew, told Jacques to assist in running cars down to the carrier and to look after the trigs. When Jacques assisted with the first car, Colback told him not to remove a trig until a man had mounted the car, tested the brakes, and signaled him to remove it; but during the four and a half days Jacques worked at running down cars, he habitually tapped the trigs in order to see if they were tightly set and for the purpose of "being ready" to knock them out when he received the signal, and carried on this practice in the presence of Colback and McKinley, who were sometimes on the ground and sometimes on the cars, and could have seen him if they had looked.

On the day of the plaintiff's injury, Colback, McKinley, and Jacques went up the track to bring down a loaded car to the carrier. McKinley mounted the car. Before he had given the signal to knock out the trig, Jacques, who supposed that the trig was under the wheel as tightly as others had been and did not know that tapping the trig was likely to knock it out and cause the car to start, tapped this trig with his pinch-bar, as he had done to others, for the purpose of trying it. He did not intend to knock it out. The trig had been loosely placed; and as Jacques tapped it with his bar it flew out, allowing the car to escape and run down into the mill, thus causing the injury complained of.

It did not appear that McCann gave Jacques any instructions, or directed any one to instruct him, or ever made any investigation as to the manner in which he performed his duties. Jacques was not told that some of the brakes were defective, and it did not appear that he knew that any of them were in an unfit condition. It did not appear that Jacques had ever worked at handling cars elsewhere, or had ever done labor similar to that which he was required to perform in moving cars down to the carrier. The plaintiff knew nothing about the system of moving cars down the track to the carrier, and testified that he never before saw the cars come down into the mill where he was employed, as they did at the time he was injured.

*Sullivan & Daley*, for the plaintiff.

*Rich & Marble* and *Drew, Jordan, Shurtleff & Morris*, for the defendants.

BINGHAM, J. It is conceded that the plaintiff was in the exercise of due care at the time he received his injury. The controversy is as to the defendants' negligence. Upon this branch of the case two questions were submitted to the jury: "(1) Whether

the rules and regulations as to letting down the cars to the carrier were defective; (2) whether the defendants used ordinary care in employing the plaintiff's co-servant, Jacques." The motion for a nonsuit presents the inquiry whether an affirmative answer to the first question, or a negative answer to the second, could reasonably be found from the evidence.

It seems to us that there was evidence warranting answers favorable to the plaintiff on both propositions. As to the first, it could be found that the course of conduct pursued by Jacques in tapping the trigs with a pinch-bar, before the men had taken their positions at the brakes and given the signal to remove the trigs, had continued for such a length of time that the defendants knew of the custom and had adopted it as a method of conducting their business, and were negligent in so doing.

As to the second question, it may be said that the evidence discloses that the defendants failed to exercise ordinary care in employing and instructing Jacques as to his duties. At the time he was taken into the defendants' service, no inquiries were made with reference to his knowledge of the work he was to perform; and it was not shown that he had ever handled cars before, or done work similar to that he was called upon to do for the defendants. The only instructions he received were from a co-laborer; and in view of the hazards of the business, it could be found that those given afforded inadequate protection to the plaintiff and the other men engaged in this branch of the defendants' service. It was often difficult to remove the trigs from beneath the car wheels; and as the defendants knew or must be presumed to have known this, they could reasonably have anticipated that Jacques, who was unacquainted with the dangers of the business, might tap the trigs to see if they were tight, before the men were at the brakes, and inadvertently and unintentionally push them out, as he did on this occasion. This being the case, the defendants could be found to have been negligent, either in employing a man who was unacquainted with the work and its attendant dangers, or in not giving him adequate instructions as to what he should do and how he should do it, to protect his co-employees from unnecessary dangers.

*Exceptions overruled.*

All concurred.