Hillsborough, }
April 7, 1925. }

## ALBANY DUCAS *v.* INTERNATIONAL COTTON MILLS.

The fact that doors protecting gears frequently fell open, and that employees generally, whatever the nature of their work, closed them when found open, could be found to charge the employer with knowledge that the doors were likely to fall open, and to negative the claim that the plaintiff, in attempting to close such doors when they had fallen open, was not acting within the scope of his employment.

When it appears that the defect causing the doors to fall open was hidden from sight, but could have been obviated by inspection or by the use of some other mechanism, it can be found that the employee was not chargeable with knowledge of the defect, while the employer, by reason of his duty of inspection, might be chargeable.

CASE, for negligence at common law for personal injuries to an employee. Trial by jury, view taken and verdict for the plaintiff. Transferred by *Allen,* J., upon the defendant's exceptions to the denial of its motions for a nonsuit and for a directed verdict.

*Osgood & Osgood (Mr. Anson G. Osgood* orally), for the plaintiff.

*Lucier & Lucier,* for the defendant.

SNOW, J. The plaintiff had been employed for three or four years as a doffer. His work was upon spinning frames, replacing full bobbins with empty ones. He tended six or seven frames of 112 bobbins each, making a complete change every forty-five to fifty minutes. The bobbins were carried in wooden boxes two feet long, one foot wide and eighteen inches high. There were alleys at the ends of the frames, eighteen inches to two feet wide, through which the doffers passed back and forth with these boxes. On either side of the alleys were gears, by means of which the speed of the machines was regulated from time to time. The gears were covered by vertical iron doors arranged in pairs. The doors were supported each by a separate bolt passing through the middle of the bottom of the door and the edge of the frame, and were held in place when closed by a single lock knob at the top. The impact of trucks and boxes while being moved through the narrow alleys had a tendency to loosen the bolt and to release the lock knob, permitting the doors to fall open. In such case each door of the pair would swing away from the common lock knob and downward upon its bolt as upon a hinge,

leaving the gears exposed. Each door weighed eight to ten pounds, was eighteen inches in height, irregular in shape and when closed lapped over the edge of its frame one-half inch or more. To close a pair of doors which had fallen open, it was necessary to lift them upward and together and at the same time to press them back of the lock knob and tighten the knob.

The plaintiff's evidence tended to show that at the time of the injury he was attempting to close and fasten a pair of doors which had fallen open; that when he had nearly closed them, and as he was pressing the top of the right door into position behind the knob, the door suddenly dropped "straight down" to the floor, permitting his hand to come in contact with a moving gear; that the door fell by reason of the working out of the bolt upon which it was hinged. The negligence relied upon was either the defective construction of this sustaining bolt or the failure to inspect its condition. The bolt was three sixteenths of an inch in diameter, and an inch and a half long. It was held in place upon the outside of the door by a round head, and upon the inside of the frame by a six-cornered nut fitted to a shoulder. When loose the nut could be removed by four or five more turns. There was evidence from which it could be found that the repeated contact of moving trucks and boxes with the door and with the outer end of the bolt, the opening and shutting of the door, and the vibration of the machinery, one and all, had a tendency to loosen and unscrew the nut and to cause the bolt to work out, leaving the door without support; that this result could have been obviated either by frequent inspections and tightening of the nut or by the use of a check nut.

The contentions of the defendant that it was not chargeable with knowledge of the custom of doffers to close the doors when they found them open, and therefore that the plaintiff was not acting within the scope of his employment when injured, are without merit. The plaintiff testified that the doors fell open often, sometimes once a day and sometimes once a week, that all the doffers were accustomed to close them whenever they found them open, and that such custom had continued during the entire four years of his employment. He was corroborated by the testimony of the defendant's section hand in charge of the room called by the plaintiff, and by that of a fellow workman called by the defendant, that it was customary for the first one who happened by to close doors which had fallen open. It is clear that it could be found from this evidence that the defendant's officers must have known of a custom so frequently prac-

ticed and so long continued, and had adopted it as a method of conducting its business (*Willette* v. *Company,* 75 N. H. 399, 401); and that the defendant was chargeable with knowledge that the ordinary person in the plaintiff's situation would have understood therefrom that he was expected to close the doors whenever he found them open. *Roussel* v. *Company,* 80 N. H. 254, 256; *D'Ambrosio* v. *Railroad, ante,* 119, 120.

The defendant contends that the working out of the bolt which caused the door to fall and permitted the plaintiff's hand to come in contact with the gear either was a risk assumed by the plaintiff or was such an unusual and unknown danger that the defendant was not at fault for not anticipating it. Neither conclusion follows. It could be found that other instances of the falling of doors by reason of the working out of the bolt had come to the attention of the defendant's section men but had never before occurred to the knowledge of the plaintiff. The plaintiff had observed the round head of the bolt but had never examined the interior of the frame to see how the bolt was held in place. It could be found that the nut was not plainly visible and that its construction could not have been ascertained without inspection. The plaintiff knew of the presence of the moving gears, the danger of injury to his hand if it came in contact with them, and the danger of such contact if the door should suddenly drop from its hinge. What he did not know, and was not to blame for not knowing, was the danger of the door dropping from its hinge. It could be found, therefore, that this was a danger which the plaintiff did not assume.

The disparity in the knowledge chargeable to the respective parties arises from the difference in their duties toward the condition of the premises. The plaintiff owed the defendant no duty of inspection to discover its negligence, and was chargeable only with knowledge of such conditions as would be presented to his mind by what he saw or ought to have seen. It could be found on the evidence that he was not chargeable with knowledge of the negligent construction or maintenance of the retaining nut upon the interior of the frame. *Derosier* v. *Company, ante,* 451. On the other hand, the defendant, knowing the custom of the doffers to close the doors whenever they found them open, and owing them the duty to do what a reasonable man in its situation would have done to make such action safe, might be found chargeable with knowledge of the condition of the bolt and its retaining nut, the defect in which permitted the door to fall. On the evidence it could be found that a reasonable

man in the defendant's position would have provided for frequent inspections and tightening of the nut, or would have secured the bolt in place by a check nut.

*Exceptions overruled.*

ALLEN, J., did not sit: the others concurred.